# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| Jasmine Robertson<br>*Plaintiff*<br><br>vs<br><br>TrueAccord Corp.<br>January Technologies, Inc.<br><br>*Defendant(s)* | § <br>§  Case Number: 4:25-cv-02816<br>§ <br>§ <br>§ <br>§ <br>§ |



United States Courts
Southern District of Texas
FILED

JUL 2 8 2025

Nathan Ochsner, Clerk of Court

## PLAINTIFF'S OPPOSITION TO DEFENDANT TRUEACCORD CORP.'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

Plaintiff Jasmine Robertson ("Plaintiff") files this Opposition to Defendant TrueAccord Corp. ("Defendant" or "TrueAccord") Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), and in support respectfully shows the Court as follows:

### I.                                    INTRODUCTION

Plaintiff's Amended Complaint alleges specific and plausible violations of the FDCPA and TCPA, supported by dates, the content of each message, and the method by which those messages were transmitted. Contrary to Defendant's assertion, Plaintiff does not merely allege a lack of disclosure she alleges that no proper § 1692g notice was ever received, and that any alleged email notice fails under 15 U.S.C. § 7001(c) and 12 C.F.R. § 1006.42(b) due to the absence of E-SIGN consent. Defendant's attempt to rely on an unauthenticated email and internal declaration rather than certified mailing or verified consent fails at the pleading stage. Under well-established Fifth Circuit law, including *Custer v. Murphy Oil USA, Inc.*, 503 F.3d 415, 420–22 (5th Cir. 2007), Plaintiff's denial of receipt creates a fact issue that cannot be resolved on a motion to dismiss. Plaintiff has

plausibly alleged statutory violations that entitle her to relief, and the Complaint easily satisfies Rule 8.

## II.   BACKGROUND

Plaintiff filed this action on June 17, 2025, asserting claims under the Fair Debt Collection Practices Act ("FDCPA") and the Telephone Consumer Protection Act ("TCPA") against TrueAccord Corp. and January Technologies, Inc. On July 11, 2025, Plaintiff filed an Amended Complaint (Dkt # 4), alleging that TrueAccord sent a series of collection-related text messages beginning May 9, 2025, without first providing the required written validation notice under 15 U.S.C. § 1692g. Plaintiff further alleges that the messages included language urging immediate payment, overshadowing her statutory rights, and were sent using an automatic telephone dialing system without consent, in violation of the TCPA. TrueAccord filed its Motion to Dismiss on July 24, 2025 (Dkt # 8), asserting that all claims fail as a matter of law. Plaintiff now opposes that motion.

## III.   STANDARD FOR DISMISSAL

In deciding a Rule 12(b)(6) motion to dismiss, the court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Crest Foods, Inc. v. Fat Brands, Inc.*, No. 23-50784, 2025 U.S. App. LEXIS 942 (5th Cir. Jan. 12, 2025) (quoting *Martin K. Eby Constr. Co. v. DART*, 369 F.3d 464, 467 (5th Cir. 2004)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Green Ice Tech., LLC v. Ice Cold 2, LLC*, No. 3:18-CV-00123, 2018 U.S. Dist. LEXIS 164367, at *4 (S.D. Tex. Sep. 25, 2018)* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"At the motion to dismiss stage, it is inappropriate for a district court to weigh the strength of the allegations." *Petteway v. Galveston Cnty.*, No. 3:22-CV-00057, 2023 WL 143171, at *3 (S.D. Tex. Jan. 10, 2023) (citing *Shah v. VHS San Antonio Partners, LLC*,

985 F.3d 450, 452 (5th Cir. 2021)). "The following facts are taken from Plaintiff's First Amended Complaint, which the Court must take as true for purposes of this motion before it." *Giramur v. Wormuth*, No. SA-22-CV-01140-XR, 2023 WL 2663258, at *1 (W.D. Tex. Mar. 28, 2023).

**IV.**     **ARGUMENT**

### TrueAccord's Use of Email Without E-SIGN Consent Does Not Trigger the Mailbox Rule

While Defendant asserts that the § 1692g notice was sent via email on May 5, 2025, that claim alone does not establish compliance with the FDCPA. Under the plain language of § 1692g, the validation notice must be in writing. If Defendant relied on email rather than postal mail, then the E-SIGN Act governs whether the electronic delivery was legally valid. That statute requires affirmative consent by the consumer, informed disclosure of rights, and evidence the consumer can access the electronic format. Without this consent process, the purported email does not constitute a valid written notice under the FDCPA. Defendant has offered no evidence that Plaintiff consented to receive legal notices electronically in accordance with E-SIGN, nor that the content met the Act's technical delivery requirements.

TrueAccord's reliance on *Mahon v. Credit Bureau, Inc.*, 171 F.3d 1197 (9th Cir. 1999), is misplaced and inapplicable to the facts of this case. In *Mahon*, the debt collector sent a physical validation notice through the U.S. Postal Service using a well-documented and verified mail system. The mailing process involved automated systems that printed and batched standardized letters, verified that the number of outgoing notices matched internal logs, and tracked whether any letters were returned undelivered. The debtor had lived at the same physical address for 45 years, and there was no dispute that the address used was correct. Based on this detailed, physical mailing process, the Ninth Circuit applied the common law Mailbox Rule, which creates a rebuttable presumption that properly mailed documents are received.

The Fifth Circuit has made clear that the Mailbox Rule's presumption of receipt is rebuttable and does not apply where mailing is unproven. In *Custer v. Murphy Oil USA, Inc.*, the court held that "evidence of non-receipt can be used to establish that the notice was never mailed," and clarified that "this is the inverse of the mailbox rule's presumption of receipt." 503 F.3d 415, 420–22 (5th Cir. 2007). There, the court reversed summary judgment where the defendant relied solely on internal records, but the plaintiff submitted a sworn denial supported by circumstantial facts. The same is true here. TrueAccord has offered no proof of mailing under § 1692g, no certified mail receipt, no signed green card, no affidavit of mailing, and no E-SIGN Act consent if by email. Likewise, in *Cash v. AXA Equitable Life Ins. Co.*, the Fifth Circuit reversed summary judgment where the defendant "did not prove that it mailed a letter," holding that internal records showing a document was generated were insufficient without competent evidence that the letter was actually mailed. 709 F. App'x 275, 278 (5th Cir. 2018). In contrast, courts like *Beck v. Somerset Techs., Inc.*, 882 F. Supp. 990, 993 (D. Md. 1995), upheld the presumption of receipt only where the sender produced: "(1) a properly addressed letter, (2) a certified mail receipt, and (3) a signed green card." None of those are present here. Accordingly, this issue presents a factual dispute that cannot be resolved on a motion to dismiss.

In *Lavallee v. Med-1 Solutions, LLC*, the Seventh Circuit considered whether an email sent by a debt collector satisfied the FDCPA's written notice requirement under § 1692g(a). The Bureau of Consumer Financial Protection filed an amicus brief specifically arguing that when a statute "requires that information ... be provided or made available to a consumer in writing," the Electronic Signatures in Global and National Commerce Act ("E-Sign Act"), 15 U.S.C. § 7001 *et seq.*, imposes mandatory conditions on the use of electronic records. Citing § 7001(c)(1), the Bureau explained that a debt collector cannot satisfy § 1692g's "written notice" requirement by email unless the consumer affirmatively consents and the collector complies with the E-Sign Act's procedures. The

court ultimately agreed, holding that the emails were not valid written notice because the E-Sign Act had not been satisfied.

## 15 U.S. Code § 7001 - General rule of validity states as follows:

### (c) Consumer disclosures

#### (1) Consent to electronic records

Notwithstanding subsection (a), if a statute, regulation, or other rule of law requires that information relating to a transaction or transactions in or affecting interstate or foreign commerce be provided or made available to a consumer in writing, the use of an electronic record to provide or make available (whichever is required) such information satisfies the requirement that such information be in writing if—

(A) the consumer has affirmatively consented to such use and has not withdrawn such consent;

(B) the consumer, prior to consenting, is provided with a clear and conspicuous statement—

  (i) informing the consumer of (I) any right or option of the consumer to have the record provided or made available on paper or in nonelectronic form, and (II) the right of the consumer to withdraw the consent to have the record provided or made available in an electronic form and of any conditions, consequences (which may include termination of the parties' relationship), or fees in the event of such withdrawal;

  (ii) informing the consumer of whether the consent applies (I) only to the particular transaction which gave rise to the obligation to provide the record, or (II) to identified categories of records that may be provided or made available during the course of the parties' relationship;

  (iii) describing the procedures the consumer must use to withdraw consent as provided in clause (i) and to update information needed to contact the consumer electronically; and

      **(iv)** informing the consumer (I) how, after the consent, the consumer may, upon request, obtain a paper copy of an electronic record, and (II) whether any fee will be charged for such copy;

**(C)** the consumer—

    **(i)** prior to consenting, is provided with a statement of the hardware and software requirements for access to and retention of the electronic records; and

    **(ii)** consents electronically, or confirms his or her consent electronically, in a manner that reasonably demonstrates that the consumer can access information in the electronic form that will be used to provide the information that is the subject of the consent; and

**(D)** after the consent of a consumer in accordance with subparagraph (A), if a change in the hardware or software requirements needed to access or retain electronic records creates a material risk that the consumer will not be able to access or retain a subsequent electronic record that was the subject of the consent, the person providing the electronic record—

    **(i)** provides the consumer with a statement of (I) the revised hardware and software requirements for access to and retention of the electronic records, and (II) the right to withdraw consent without the imposition of any fees for such withdrawal and without the imposition of any condition or consequence that was not disclosed under subparagraph (B)(i); and

    **(ii)** again complies with subparagraph (C).

"We do not look beyond the plain meaning of the statute unless the statute is absurd or ambiguous. Without ambiguity, we are not permitted to look to the legislative history or agency interpretation." *ConocoPhillips Co. v. U.S. EPA*, 612 F.3d 822, 832 (5th Cir. 2010). There is no ambiguity here. Congress said "in writing," not "by email," and made no reference to electronic communication in § 1692g. Defendant's email-based notice is therefore invalid as a matter of law.

As explained in *Reinert v. Power Home Remodeling Grp., LLC*, "The E–Sign Act only requires that consent be accompanied by certain disclosures under specific statutes." *No. 19-cv-13700, 2020 WL 6551222, at 5 (E.D. Mich. Nov. 6, 2020)*. Because § 1692g(a) requires that the validation notice be sent 'in writing,' a collector relying on electronic

delivery must comply with the E-Sign Act, which provides that when 'a statute, regulation, or other rule of law requires that information... be provided or made available to a consumer in writing,' electronic delivery satisfies that requirement only if the consumer has affirmatively consented and has received the disclosures required by 15 U.S.C. § 7001(c)(1).

### Overshadowing Under McMurray

Defendant's reliance on *McMurray v. ProCollect, Inc.*, 687 F.3d 665 (5th Cir. 2012), is misplaced. *McMurray* turned on the fact that (1) the debt collector mailed a letter, (2) the § 1692g notice was printed in boldface, (3) was on the same page, (4) was placed directly above the payment slip, and (5) was not contradicted by any demand for payment in a shortened time frame. The court explicitly found that "neither a least-sophisticated or unsophisticated consumer would be confused" because nothing in the letter distorted the required notice, either by content or layout. Id. at 670–71.

But here, the facts are wildly different. Plaintiff alleges no letter was mailed at all, only text messages were sent, with no physical validation notice, no formatting safeguards, and no spatial cues to offset the payment links. Unlike *McMurray*, there is no bolded validation notice, no proper placement, and no mailing. In fact, Defendant claims that an email was sufficient to satisfy the FDCPA's written validation notice requirement. That argument fails, particularly in light of the Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), 144 S. Ct. 2244, 219 L. Ed. 2d 832, which overruled *Chevron* deference and reaffirmed that courts must give effect to the plain language of statutes under the Administrative Procedure Act. The FDCPA does not expressly authorize debt collectors to satisfy the written notice requirement of 15 U.S.C. § 1692g(a) through electronic means. Instead, any attempt to do so must comply with the requirements of the E-SIGN Act, 15 U.S.C. § 7001(c), which mandates that the consumer must affirmatively consent to electronic communications in a manner that demonstrates their ability to access such information. Defendant has failed to allege, let alone prove, that Plaintiff gave informed and demonstrable consent to receive the

validation notice electronically. Without such consent, an email cannot satisfy the FDCPA's written notice requirement. *Loper Bright* forecloses the argument that agency interpretations or informal guidance can override the statute's plain language, and no court should defer to a collector's self-serving assumption that email alone is legally sufficient.

Additionally, the *McMurray* court emphasized that ProCollect's letter included a clear separation between collection language and the statutory notice, and warned of credit consequences only if the debt remained unpaid and undisputed. Here, TrueAccord sent text messages without any accompanying notice, and even suggested "setting up payment plans" during the 30-day validation period with no reminder of Plaintiff's right to dispute. That's overshadowing in its purest form. The bottom-line *McMurray* upheld a mailed, carefully formatted letter. This case involves unregulated digital contact, devoid of § 1692g compliance or E-SIGN consent. The contrast isn't subtle it's dispositive.

## Misleading Representations Under § 1692e Are Questions of Fact, Not Grounds for Dismissal

Misrepresentations under 15 U.S.C. § 1692e are evaluated under the "least sophisticated consumer" standard and routinely involve fact-based determinations not suited for resolution at the pleading stage. Defendant asserts that Plaintiff's claims under § 1692e(2)(A) and § 1692e(10) fail because it allegedly sent a timely § 1692g(a) validation notice prior to initiating text message communications. But this argument is premature and ignores well-settled precedent holding that disputes over the timing, content, and effect of debt communications present factual questions. For example, in *Lee v. Credit Management, LP*, 846 F. Supp. 2d 716 (S.D. Tex. 2012), the court rejected the notion that intent is required to violate § 1692e(2)(A), holding instead that even unintentional misrepresentations regarding a debt can trigger liability. Similarly, in *Carrera v. Allied Collection Services, Inc.*, the court denied summary judgment, finding that a material factual dispute existed under § 1692e where the defendant had attempted to collect a nonexistent debt. Viewing the evidence in the light most favorable to the plaintiff, the

*Carrera* court concluded that whether the communication was misleading was a question of fact, not law. This principle aligns with other courts across circuits, including *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003), *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. 1996), and *Gains v. JBC & Assocs., P.C.*, 352 F. Supp. 2d 262 (D. Conn. 2005), which have held that § 1692e violations can arise from objectively misleading statements, regardless of intent. Accordingly, As the court explained in *Flecha v. Medicredit, Inc.*, No. SA-17-CV-1266-XR, 2017 WL 3027201, at *3 (W.D. Tex. July 17, 2017), "because district judges are not good proxies for the unsophisticated consumer whose interests the FDCPA protects, district courts should be hesitant to dismiss § 1692e and § 1692f claims." Plaintiff's allegations raise precisely the kind of factual dispute that cannot be resolved on the pleadings alone. Plaintiff's claims under § 1692e(2)(A) and § 1692e(10) are fact-driven and cannot be resolved on a motion to dismiss.

### Harassment Under § 1692d Is a Jury Question, Not Proper for Dismissal

Whether a debt collector's conduct constitutes harassment, oppression, or abuse under 15 U.S.C. § 1692d is typically a question of fact for the jury. As the court recognized in *Martinez v. Eltman Law, P.C.*, 444 F. Supp. 3d 748 (N.D. Tex. 2020), "[o]rdinarily, the determination of whether a debt collector's conduct constituted harassment, oppression or abuse in violation of the Act is a question of fact for the jury, however, in appropriate cases, the question can be resolved as a matter of law." Courts around the country have echoed this position. In *Holland v. Bureau of Collection Recovery*, No. 3:08-CV-261, 2011 WL 2848658, at *10 (M.D. Fla. July 19, 2011), the court noted that "the majority of courts throughout the nation recognize that whether the nature and frequency of debt collection calls constitutes harassment is also a fact issue for the jury." Here, Plaintiff has alleged facts sufficient to raise a plausible claim under § 1692d: namely, a campaign of unwanted and repeated text messages sent in close succession, without a clear opt-out mechanism, and following Defendant's failure to properly validate the debt as required by law. At this stage, all factual inferences must be drawn in Plaintiff's favor. Whether

this conduct rises to the level of harassment under § 1692d is a context-specific, fact-intensive inquiry and is therefore inappropriate for resolution on the pleadings alone.

### Defendants' Challenge to Plaintiff's TCPA Claim Fails at the Pleading Stage

Defendant contends that Plaintiff fails to plausibly allege use of an automatic telephone dialing system (ATDS) as defined under 47 U.S.C. § 227(a)(1) and clarified by the Supreme Court in *Facebook Inc. v. Duguid*, 592 U.S. 395 (2021), which held that "in all cases" an ATDS must involve the use of "a random or sequential number generator." However, Paragraph 51 of Plaintiff's Amended Complaint alleges:

> *"Defendants violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by sending unsolicited text messages to Plaintiff's cell phone using an automatic telephone dialing system ("ATDS") with the capacity to store or produce numbers using a random or sequential number generator. On information and belief, Defendants' system sent messages in mass from a short code, without human intervention, consistent with ATDS use."*

Defendant's challenge to Plaintiff's TCPA claim under 47 U.S.C. § 227(b)(1)(A)(iii) fails because it disregards both the governing legal standard post-*Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021), and the specific factual allegations in the Amended Complaint. In *Duguid*, the Supreme Court held that an automatic telephone dialing system (ATDS) must have the capacity either "to store a telephone number using a random or sequential number generator" or "to produce a telephone number using a random or sequential number generator." *Id.* at 1167. Contrary to Defendant's suggestion, courts interpreting *Duguid* have consistently held that plaintiffs are not required to allege the inner workings of the dialing equipment at the pleading stage, particularly where such details are exclusively within the control of the defendant. See, e.g., *Atkinson v. Pro Custom Solar LLC*, No. SA-21-CV-178-XR, 2022 WL 4071998, at *6 (W.D. Tex. Sept. 1, 2022); *Miles v. LawnStarter, Inc.*, No. 1:20-CV-00510, 2020 WL 6803256, at *3 (W.D. Tex. Dec. 1, 2020). Here, Plaintiff's allegations in ¶ 51 of the Amended Complaint go beyond

boilerplate legal conclusions. Plaintiff specifically alleges that Defendants sent unsolicited text messages using an ATDS "with the capacity to store or produce numbers using a random or sequential number generator." While Defendant argues that Plaintiff's ATDS allegations are insufficient, courts including those in this Circuit have recognized that plaintiffs face a significant disadvantage at the pleading stage, particularly when the dialing technology used is uniquely within the possession of the defendant. Chief Judge Barbara Lynn has held that "[s]imply alleging the use of an ATDS, without more, is insufficient to sustain a TCPA claim." *Cunningham v. Nationwide Sec. Sols., Inc.*, No. 3:16-CV-00593-M, 2017 WL 10486988, at *3 (N.D. Tex. Nov. 2, 2017). However, she also acknowledged that "courts have noted the difficulty a plaintiff faces in knowing the type of calling system used without the benefit of discovery," and thus plaintiffs may rely on circumstantial or indirect indicators to meet their burden. *Id.* (quoting *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1129–30 (W.D. Wash. 2012)). Numerous courts have since adopted that approach, allowing plaintiffs to plead the use of an ATDS based on contextual factors such as generic message content, use of SMS short codes, lack of human intervention, and identical messages sent in mass to consumers. See *Jones v. FMA All. Ltd.*, 978 F. Supp. 2d 84, 87 (D. Mass. 2013); *Schley v. One Planet Ops Inc.*, 445 F. Supp. 3d 454, 459–60 (N.D. Cal. 2020); *Gragg v. Orange Cab Co.*, 942 F. Supp. 2d 1111, 1114 (W.D. Wash. 2013). Here, Plaintiff has alleged precisely those indicators unsolicited text messages sent from a dedicated short code, lacking personalization, sent in bulk without human interaction all of which plausibly support the inference that an ATDS with a random or sequential number generator was used. That is all Rule 8 requires at this stage.

Accordingly, Plaintiff's TCPA claim is not only sufficiently pled it is directly tailored to the post-*Duguid* framework and well-supported by factual allegations. The motion to dismiss should be denied

## V.                      CONCLUSION

Defendant TrueAccord's motion to dismiss should be denied in full. Plaintiff has plausibly alleged violations of the FDCPA and TCPA, supported by specific facts, dates, and statutory citations. The sufficiency of notice under § 1692g presents a factual dispute particularly where Defendant relies on email delivery without proof of E-SIGN consent. The alleged overshadowing and misleading representations are textbook jury issues under §§ 1692e and 1692d, as recognized by controlling and persuasive authority. Finally, the TCPA claim pleads facts sufficient to raise a reasonable inference of ATDS use. At this early stage, Plaintiff's claims are entitled to proceed.

WHEREFORE, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss in its entirety. Plaintiff further prays for such other and further relief as the Court deems just and proper.

                          Respectfully Submitted,

                          /s/Jasmine Robertson
                          Jasmine Robertson Plaintiff *pro se*
                          3400 Louetta RD. Apt 436
                          Spring, TX 77388
                          Jasmine.robertson11@yahoo.com
                          (832) 898-1716

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been served upon the registered agents of record in accordance with the Federal Rules of Civil Procedure on July 28, 2025 via first class mail & email.

EUGENE XERXES MARTIN, IV
Texas State Bar No. 24078928
Email: xmartin@mgl.law
JACOB MICHAEL BACH
Texas State Bar No. 24100919
Email: jbach@mgl.law
MARTIN GOLDEN LYONS WATTS MORGAN PLLC
Northpark Central, Suite 1850
8750 North Central Expressway
Dallas, Texas 75231
TEL: (214) 346-2630
FAX: (214) 346-2631
COUNSEL FOR DEFENDANT

/s/Jasmine Robertson
Jasmine Robertson Plaintiff *pro se*